WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mackenzie Brown,<br><br>    Plaintiff,<br><br>v.<br><br>State of Arizona, et al.,<br><br>    Defendants. | No. CV-17-03536-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion for Judgment on the Pleadings of Defendants Richard and Rita Rodriguez. (Doc. 63). For the following reasons the motion is denied.

**BACKGROUND**

For the purposes of this Motion for Judgment on the Pleadings, the Court takes all the allegations in Plaintiff Mackenzie Brown's complaint as true. *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998).

Defendant Richard Rodriguez was, during the time relevant to this lawsuit, the head football coach at the University of Arizona. Rodriguez recruited Orlando Bradford—who is not a party to this suit—to play football and Bradford enrolled at the University and joined the team. Like all student athletes, Bradford agreed to University codes of conduct, which included punishments up to and including expulsion from the University for certain actions. Additionally, Bradford agreed to football team policies which, if broken, could result in expulsion from the team. One such policy mandated "zero tolerance" for acts of domestic violence and required expulsion from the team for any such acts.

However, it is alleged that under Rodriguez, a set of "shadow policies" was instituted for the football program. These alleged policies effectively negated proper enforcement of Title IX and other laws protecting students and employees from domestic violence, sexual assault, and sexual harassment in situations where enforcement of those laws would hinder the football team's success on the field. The Complaint alleges that Rodriguez thwarted those laws to increase his pay because his contract with the University included significant financial incentives for winning football games. Rodriguez allegedly instituted these "shadow policies" through written and unwritten means to the staff and players.

Within a few months of beginning his university football career, Bradford began a pattern of violent behavior. The University was contacted by the mother of a female student-athlete who had been dating Bradford. The mother reported that Bradford had physically attacked her daughter on multiple occasions. The victim filed a report with campus police, and the Complaint alleges that University athletic department personnel were present when the report was filed. The Complaint alleges that the Defendants (including Rodriguez) responded by arranging for alternative housing for Bradford—he was moved from the campus dorm in which he was living to a private residence off-campus, where he lived with other members of the football team. The campus police report against Bradford was dismissed and Bradford was informed that no further action would be taken.

Bradford then assaulted a second female U of A student. The assaults were allegedly witnessed by other members of the football team at the house. Bradford allegedly bragged openly about assaulting the woman—discussing it in team common areas including the locker room. The Complaint alleges that his actions were not kept secret from athletic department staff and coaches. The second victim's mother also notified the University. The Complaint alleges that Rodriguez was aware of Bradford's history of attacks on female students yet failed to discipline Bradford, failed to take any actions to protect other students, and in fact, named Bradford to a starting position on the football

team.

Bradford subsequently attacked a third woman—Plaintiff Mackenzie Brown—in his off-campus residence. Bradford later admitted to "tortur[ing]" Ms. Brown, and allegedly bragged to other teammates in the locker room about his attacks. The assault was reported to Tucson police, who arrested Bradford. After the media picked up the story, the University dismissed Bradford from the football team under its "zero tolerance" domestic violence policy.

Ms. Brown subsequently filed this action against the State of Arizona, the Arizona Board of Regents, and Rodriguez. She brings a Title IX claim, a negligence claim, and a claim of intentional infliction of emotional distress against the school, and an Equal Protection claim against Rodriguez under 42 U.S.C. § 1983.

# DISCUSSION

## I. Legal Standards

Federal Rule of Civil Procedure 12 allows a party—once the pleadings have closed—to move for judgment on the materials submitted. Fed. R. Civ. P. 12(c). Such a motion will be granted "when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Nelson*, 143 F.3d at 1200. Conclusory statements that merely recite the elements of a claim are insufficient to survive a 12(c) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (stating that *Iqbal* applies to Rule 12(c) motions because Rule 12(b)(6) and Rule 12(c) motions are "functionally identical."). Rather, to survive a Rule 12(c) motion, a plaintiff must allege sufficient facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

## II. Analysis

To state a claim under 42 U.S.C. § 1983, a plaintiff must show: "(1) that the conduct complained of was committed by a person acting under the color of state law; and (2) that

this conduct deprived them of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pistor v. Garcia*, 791 F.3d 1104, 1114 (9th Cir. 2015) (emphasis removed). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *West v. Atkins*, 487 U.S. 42, 49–50 (1988).

Vicarious liability is unavailable in § 1983 actions, and "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. However, a state actor can "subject[] another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (internal quotation marks omitted). "The requisite causal connection may be established when an official sets in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional harms." *Id.* (internal quotation marks omitted).

The Complaint alleges the following facts that, when taken as true, state a claim for relief under 42 U.S.C. § 1983. Coach Rodriguez created an atmosphere in the football program in which compliance with laws and policies designed to protect women from violence and discrimination was not enforced. (Doc. 21 at 3 ¶ 18; 9 ¶ 73). His football players followed suit and did not take U of A and team policies seriously. (*Id.* at 5 ¶ 36). Rodriguez failed to remove Bradford from the team when he learned of Bradford's violence towards his first two victims. (*Id.* at 6 ¶ 40; 4 ¶ 23; 5 ¶ 30). Instead, Rodriguez was involved in the decision to move Bradford from the campus housing in which he was living to a house off-campus where he would live with other football players. (*Id.* at 5 ¶¶ 30–32). The other players in the house did not take university or football team policies seriously because of the lax attitude towards compliance instigated by Rodriguez, so Bradford's living arrangements provided little supervision. (*Id.* at 5 ¶¶ 30–36). Ms. Brown,

Bradford's third victim, was brutalized by Bradford at the residence arranged by Rodriguez and the other defendants. (*Id.* at 6 ¶¶ 41–44).

The Complaint therefore alleges that Rodriguez was acting under color of state law—he "abuse[d] the position given to him by the State" in order to maximize his team's success and therefore his personal compensation. Rodriguez's conduct deprived Ms. Brown of her right to be free from sex-based discrimination at a public educational institution. Because Rodriguez was aware of Bradford's history of violence, his decisions to (1) not remove Bradford from the team, (2) create a team culture of lax compliance with policies and laws, and (3) move Bradford to a living situation in which there would be little supervision, set in motion a series of acts by Bradford which Rodriguez knew or reasonably should have known would cause Bradford to violate Ms. Bradford's right to be free from such sex-related violence.

The allegations, taken as true, state a claim. *Nelson*, 143 F.3d at 1200. Rodriguez is therefore not entitled to judgment under Federal Rule of Civil Procedure 12(c).

**IT IS THEREFORE ORDERED** that the Motion for Judgment on the Pleadings (Doc. 63) of Defendants Richard and Rita Rodriguez is **DENIED**.

Dated this 29th day of May, 2019.

_____
G. Murray Snow
Chief United States District Judge