**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mackenzie Brown,<br><br>    Plaintiff,<br><br>v.<br><br>State of Arizona, et al.,<br><br>    Defendants. | No. CV-17-03536-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendants State of Arizona, et al. ("Defendants")' Motion for Summary Judgment, (Doc. 193), and Motion to Strike Notice, (Doc. 203). The Motion for Summary Judgment is granted and the Motion to Strike is denied as moot.

## BACKGROUND

Plaintiff Mackenzie Brown ("Plaintiff") enrolled as a University of Arizona ("University") freshman in the fall of 2015. In approximately February 2016, Plaintiff began dating Orlando Bradford, a fellow freshman and University football player. Plaintiff's relationship with Bradford became violent during the summer of 2016; Plaintiff testified that "little things" could incite Bradford's anger, such as changing the appearance of his name in her phone. Plaintiff asserts that Bradford assaulted her approximately ten times over the course of the summer, but her memory of the assaults is poor, and she testified to only vague details of two of the assaults.

The first of the assaults about which Plaintiff testified occurred around August 2016, after Bradford sent Plaintiff threatening text messages while she was out of town. She

showed the texts to her mother who warned Bradford to stay away from her daughter. Neither Plaintiff nor her mother reported the threats to the University or the police, and Plaintiff continued seeing Bradford against her mother's instruction. Shortly thereafter, Bradford and Plaintiff were arguing when he hit her and blackened her eye. She does not remember what the argument was about and did not testify as to where it occurred. The second assault that Plaintiff recalled also happened in August 2016 at a Goodyear Tire store, when Bradford became angry at seeing another man's name in her cell phone. He grabbed her arm and dug his nails in, leaving a wound. Plaintiff did not report either of these two assaults to the University, the police, her mother, or anyone else because she did not want Bradford to get in trouble.

On September 12, 2016, Plaintiff went to Bradford's off-campus house after work. Following an argument about whether Plaintiff had scratched Bradford's car, Bradford refused to let her leave and assaulted her repeatedly over the course of the evening. The following day, Plaintiff again went to Bradford's house after work. Like the night before, Bradford became angry over a trivial issue—Plaintiff's refusal to eat a Wendy's milkshake. Bradford again assaulted Plaintiff repeatedly over the course of the evening, and again Plaintiff spent the night at Bradford's house.

The University was not made aware of Bradford's assaults against Plaintiff until September 14, 2016, when Plaintiff informed her mother, who called the University athletic director.[1] Nor does Plaintiff allege that any of the assaults occurred on campus or in another location under University control. Plaintiff's claims in this case instead arise out of the University's knowledge of Bradford's abuse of two other female students with whom he was romantically involved during the 2015-2016 school year—Student A and Lida DeGroote.[2] Defendants do not dispute that they knew about Bradford's abuse of Student A

---

[1] Plaintiff's mother also called the police, who arrested Bradford later that day. Bradford ultimately pled guilty to two counts of felony aggravated assault and domestic violence and was sentenced to five years in prison.

[2] Student A is not a party to this action. Lida DeGroote is the plaintiff in the related action, *DeGroote v. Arizona Board of Regents.*, No. 2:18-cv-00310-SRB.

- 2 -

and Ms. DeGroote to varying degrees.[3]

On September 13, 2017, Plaintiff filed a complaint in Maricopa County Superior Court alleging (1) a violation of Title IX, (2) intentional infliction of emotional distress, and (3) negligence. The case was removed to this Court on October 5, 2017. An amended complaint was filed on February 23, 2018 alleging the same claims. Counts Two and Three were dismissed pursuant to a stipulated motion to dismiss on September 13, 2019. On November 8, 2019, Defendants filed this motion for summary judgment on the remaining Title IX claim.

**DISCUSSION**

**I. Legal Standard**

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the

---

[3] On or about March 22, 2016, Student A's softball teammates met with Erika Barnes, the University's Executive Senior Associate Athletics Director and Title IX Liaison, and told her, among other things, that: they thought Student A was seeing Bradford again (despite Student A telling her mother, and her mother conveying to the University, that Student A and Bradford had broken up at the end of December 2015); they had seen Student A and Bradford yelling and fighting in their dorm during the fall of 2015; Bradford had admitted to hitting Student A in November 2015; he had within the past week threatened to "f her up/hit her"; he had choked Student A the previous semester; Student A currently had scratches on the side of her face as well as a black eye; Bradford had threatened to send compromising photos to Student A's family; Bradford was in a relationship with a woman named "Lida" and, according to Lida's friends, he "hits her often"; Bradford had abused Lida's dog and distributed a sex video of her; and Bradford's friend from home reported that Bradford had a violent past and was not afraid to hurt people. (Doc. 194-11 at 102.)

record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact[.]" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

**II.   Analysis**

Title IX applies to student-to-student gender-based harassment through an implied private right of action that includes the possibility of money damages. *Davis ex rel LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 640 (1999). However, "private damages actions are available only where recipients of federal funding had adequate notice that they could be liable for the conduct at issue"—conduct limited to "only . . . *[their] own* misconduct." *Id.* (emphasis added). To state a prima facie Title IX case for student-to-student harassment, a plaintiff must prove that (1) the defendant had actual knowledge of the harassment; (2) the defendant was "deliberately indifferent" to the harassment such that its indifference "cause[d] students to undergo harassment or ma[d]e them liable or vulnerable to it"; (3) the plaintiff suffered harassment so severe, pervasive, and objectively offensive that it "deprive[d them] of access to the educational opportunities or benefits provided by the school"; (4) and the defendant exercised substantial control over both the harasser and the context in which the harassment occurred. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000) (quoting *Davis*, 526 U.S. at 650).

As Defendants concede, "the University exercised a certain amount of control over Bradford because he was subject to the student Code of Conduct and other regulations." (Doc. 193 at 20.) But to be held liable under Title IX, Defendants must exercise "substantial control over both the harasser *and the context in which the known harassment occurs*." *Doe v. Round Valley Unified Sch. Dist.*, 873 F. Supp. 2d 1124, 1136 (D. Ariz. 2012) (emphasis added) (quoting *Davis*, 526 U.S. at 645) (finding that the defendant school did not exercise substantial control over the "context" of the alleged sexual harassment because "[a]ll of it

took place off campus"); *see also Samuelson v. Oregon State Univ.*, 162 F. Supp. 3d 1123, 1131–32 (D. Or. 2016), *aff'd,* 725 F. App'x 598 (9th Cir. 2018) ("Here, Ms. Samuelson's harasser drugged Ms. Samuelson at an off-campus party. OSU had no control over an off-campus party at an apartment that simply happened to be located in the same city as the university.").

Plaintiff does not allege that any of her assaults occurred on campus or at another location under University control. Instead, Plaintiff bases her claim on Defendants' knowledge of Bradford's abuse of Student A and Ms. DeGroote. But when a plaintiff asserts that a defendant's "knowledge of a *prior* report of [harassment]" is the source of liability in *her* case, the plaintiff must also "allege how [the defendant] exercised any control over the environment of *her* [harassment]." *Samuelson v. Oregon State Univ.*, 725 F. App'x 598, 599 (9th Cir. 2018) (emphasis added). Imposing liability with a lesser showing would collapse the two prongs of the *Davis* test for substantial control into one—control over the harasser—without accounting for control over the context of the harassment.

Plaintiff argues that because *Davis* specifies that a defendant must exercise control over "the harasser and the context in which the *known* harassment occurs," *Davis*, 526 U.S. at 645 (emphasis added), she need only prove that Defendants exercised control over the context of Bradford's harassment of Student A and Ms. DeGroote and not the context of her own harassment, since Defendants "knew" of that harassment in March 2016. In the context of *Davis*, however, the word "known" limits liability for Title IX defendants to harassment of which they had "actual knowledge"—another element in *Davis*'s four-factor test for Title IX liability. Contrary to Plaintiff's interpretation, there is no indication that the *Davis* court instead intended to expand liability to cover plaintiffs about whom a defendant had *no* knowledge by requiring that those plaintiffs prove only "control over . . . the harasser" and not control over the "context" of their own harassment. *Id.*

In *L.E. v. Lakeland Joint School District #272*, 403 F. Supp. 3d 888 (D. Idaho 2019), a former student brought claims against his school district under Title IX after he was

- 5 -

sexually assaulted at an off-campus sports camp. "The true nature of [the plaintiff's] Title IX claim is that he was subjected to a hostile learning environment due to continued harassment *at school*, even though [his coach] knew that he had been sexually assaulted by fellow students the prior summer." *Id*. at 900 (emphasis added). "Thus," the court noted, "the [defendant school district's] focus on whether it exercised substantial control over the Camp is somewhat misplaced," because the defendant "undoubtedly had control over its students during the school year and over the allegedly hostile environment that [the plaintiff] endured at the school." *Id. See also Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1025 (E.D. Cal. 2009) (denying summary judgment as to the "substantial control" inquiry in a Title IX case involving abuse at an off-campus summer camp because "it is undisputed . . . that the football camp was sponsored and promoted by [the defendant], its football coaches and administrators, was a core part of [the defendant's] football program, and was under the supervision of [the defendant's] teachers and/or football coaches. . . . the players were transported . . . [by the defendant's] buses," and the camp was governed by an administrative directive from the defendant).

Unlike in *Lakeland* or *Callahan*, Plaintiff does not allege that any of her abuse occurred on campus or in any other setting under Defendants' control. While it is undeniable that Defendants exercised substantial control over Bradford, Plaintiff has not offered any evidence that Defendants exercised control over the context in which her abuse occurred. Defendants therefore cannot be liable for Plaintiff's harassment under Title IX.

## CONCLUSION

Plaintiff has failed to demonstrate that Defendants exercised sufficient control over the context in which her harassment arose. "The insufficient showing on any one element is enough to support judgment in [Defendants'] favor." *Karasek v. Regents of Univ. of California*, No. 3:15-CV-03717-WHO, 2018 WL 1763289, at *14 (N.D. Cal. Apr. 12, 2018), *aff'd sub nom. Karasek v. Regents of the Univ. of California*, No. 18-15841, 2020 WL 486786 (9th Cir. Jan. 30, 2020).

/ / /

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment, (Doc. 193), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Notice, (Doc. 203), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to terminate this case and enter judgment accordingly.

Dated this 11th day of March, 2020.

G. Murray Snow
Chief United States District Judge